FILED

2018 NOV -1 AM 11: 24

DISTRICT COURT
DISTRICT OF FLORIDA
ORLANDO, FLORIDA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DISABILITY RIGHTS FLORIDA, INC.**


     Plaintiff,

v.

                          CASE NO.:

**RICHARD JACOBS**, Administrator
for Lakeside Behavioral Healthcare,
 and **ASPIRE HEALTH
PARTNERS, INC.**, a Florida
not-for-profit corporation,

     Defendant.

CASE NO.: 6:18-cv-1863-Orl-41DCl

_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65(a), Federal Rules of Civil Procedure, and Middle

District of Florida Local Rule 4.06, Plaintiff Disability Rights Florida, Inc.,

moves this Court to issue a preliminary injunction against Defendants,

Richard Jacobs, Administrator of Lakeside Behavioral Healthcare, and

Aspire Health Partners, Inc., enjoining Defendants from preventing

Disability Rights Florida and its agents from accessing the Lakeside

Behavioral Healthcare facility pursuant to its federally-granted access

authority. Plaintiff contends that Defendants' denial of Plaintiff and its

1

agents' access to its Lakeside Behavioral Healthcare facility for the purpose of monitoring conditions and services for residents there violates 42 U.S.C. § 10805(a)(3) & 42 C.F.R. § 51.42(a) and seeks a preliminary injunction so that it may access the facility pursuant to federal law.

In support of this motion, Plaintiff attaches the following memorandum of law:

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff, Disability Rights Florida, Inc., is designated as the state of Florida's federally-funded protection and advocacy (P&A) system for individuals with disabilities, including individuals with mental illness, and has been so since 1987. *See.* Ex. 1, at 2 (Decl. of Cherie Hall). Plaintiff is authorized by federal law to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of individuals with mental illness." 42 U.S.C. § 10805(a)(1)(B). Pursuant to this authority, Plaintiff filed a complaint alleging violations of the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act. Doc. 1. The complaint alleges that Defendants have violated the PAIMI Act, specifically 42 U.S.C. § 10805(a)(3) & 42 C.F.R. § 51.42(a), by denying Plaintiff and its

2

agents access to the Lakeside Behavioral Health facility in Orlando, Florida for the purpose of monitoring compliance with respect to the rights and safety of the residents there. *Id.* at 13. Plaintiff seeks declaratory and injunctive relief in its complaint. *Id.* at 13–14.

Plaintiff now seeks a preliminary injunction with this Court to allow it to lawfully exercise its federally-mandated authority to monitor mental health treatment facilities such as Lakeside Behavioral Healthcare. A P&A shall "have access to facilities providing care or treatment" to individuals with mental illness. 42 U.S.C. § 10805(a)(3). This "monitoring authority" is a crucial aspect of every P&A's federally-granted authority because "[o]nly by frequent personal contact with residents … can [a P&A] effectively carry out its mission of pursuing remedies to protect the rights of [individuals with disabilities].") *See Mississippi Protection and Advocacy System, Inc. v. Cotton*, 1989 WL 224953, at *9 (S.D. Miss. 1989), *aff'd*, 929 F.2d 1054 (5th Cir. 1991).

In this case, Plaintiff prioritized the monitoring of Defendant's facility, Lakeside Behavioral Health, in response to the receipt of information from residents regarding the rights and safety of residents there. As will be explained *infra*, denial of Plaintiff's authority by Defendant is not

3

only an irreparable harm in and of itself, but an irreparable harm in that
Plaintiff is being delayed from reasonably exercising its authority in an
expeditious manner. Accordingly, the Court should grant Plaintiff's Motion
in order to prevent further irreparable harm.

## FACTUAL ALLEGATIONS

Defendant's facility, Lakeside Behavioral Healthcare, is a facility that
provides inpatient psychiatric services and crisis intervention services and is
operated by Aspire Health Partners, Inc. *See* Program Details, Inpatient
Services, *available at* https://aspirehealthpartners.com/programs-and-
services/program-details/19/Inpatient-Services/ ("Inpatient Services provide
psychiatric services and crisis intervention 24 hours a day, 7 days a week for
individuals who meet Baker Act criteria. Behavioral interventions are
ordered by a licensed psychiatrist and supervised by licensed registered
nurses, therapists and trained mental health technicians for individuals who
are exhibiting acute mental health disorders."). In July and August of 2018,
Disability Rights Florida received calls from patients of this facility alleging
that they were being inappropriately discharged and/or not receiving
appropriate treatment for their mental illness at the facility. *See* Exhibit 2, at
2 (Decl. of Melissa Cyril). Disability Rights Florida, in response, made the

decision to expeditiously exercise its access authority, as outlined in 42

U.S.C. § 10805(a)(3) & 42 C.F.R. § 51.42(a), and began taking steps to

conduct monitoring activities at Lakeside Behavioral Healthcare.[1] *Id.* at 2–3.

On August 20, 2018, an Advocate-Investigator with Disability Rights

Florida ("Advocate-Investigator") sent a notice of facility monitoring to

Defendant Jacobs at Lakeside Behavioral Healthcare. *See* Exhibit 3.  The

two-page letter indicated Disability Rights Florida would be conducting a

one-day monitoring visit during the week of September 3-September 7,

2018. *Id.* at 1.  The letter also explained the focus would be on the

behavioral health units and services. *Id.*  Information regarding Disability

Rights Florida's authority, including citations pertaining to Disability Rights

Florida's statutory authority to access the facility for monitoring, was

provided in the letter.

On August 31, 2018, the Advocate-Investigator received a letter via

fax from Barbara Flanagan, an attorney representing Aspire Health Partners

("Aspire Health Partner's attorney"). *See* Exhibit 4.  In the letter, Aspire

---

[1] In this case, Disability Rights Florida had information that led to the
decision to expeditiously request monitoring of Defendant's facility.
However, even in the absence of such information, Plaintiff has the authority
to conduct monitoring at any facility that "render[s] care or treatment for
individuals with mental illness."  42 C.F.R. § 51.42(b).

Health Partner's attorney stated she had been provided the letter from the Advocate-Investigator to Defendant Jacobs dated August 20, 2018. *Id.* She stated Disability Rights Florida was "not authorized" to come onto the facility's premises "for any purpose." *Id.* She also stated the Advocate-Investigator's letter had "not cited any legal authority or basis entitling [her] to such access." *Id.* The letter concluded by stating "[y]ou will not be allowed on any unit or anywhere on the premises...based upon the information and purpose set forth in your letter." *Id.*

The Advocate-Investigator forwarded the Aspire Health Partners attorney's correspondence to a Managing Attorney for the Disability Rights Florida ("DRF Managing Attorney"). Upon review of the August 20, 2018 notice of monitoring and review of the Aspire Health Partners attorney's August 31, 2018 response, the DRF Managing Attorney drafted a reply letter. *See* Exhibit 5. On September 7, 2018, the three-page reply letter was sent from the DRF Managing Attorney to Aspire Health Partner's attorney via electronic mail. *See* Exhibit 6. In the reply letter, the DRF Managing Attorney explained again the authority that was outlined in the Advocate-Investigator's notice of monitoring, again provided specific statutory citations, and even provided quotations from the text of the statutes. *See* Ex.

5. The original notice of monitoring was also provided to Aspire Health Partner's attorney for reference. *See* Ex. 3. The reply letter closed by requesting confirmation that, based on the information and authority provided in the DRF Managing Attorney's reply letter, the Advocate-Investigator would be permitted to conduct a monitoring on September 18, 2018. *See* Ex. 5, at 3. The letter requested Aspire Health Partners identify the legal basis for the denial if access to monitor the facility would again be denied. *Id.*

On that same date, shortly after the DRF Managing Attorney's reply letter was sent via electronic mail, Aspire Health Partner's attorney responded via email stating simply "[y]ou will not be permitted.  I sent a letter on this already that was faxed.  Please read my letter." Exhibit 7, at 1–2. In reply to the Aspire Health Partner attorney's email, the DRF Managing Attorney responded requesting clarification on the "letter [that had] already [been] faxed." *Id.* at 1. No response was received to the request for clarification. However, nearly a week later, on September 13, 2018, the Advocate-Investigator received a fax sent to her attention from Aspire Health Partner's attorney. The fax was the same letter sent from Aspire

7

Health Partner's attorney to Advocate-Investigator on August 31, 2018,
except the date was changed to September 13, 2018. *See* Exhibit 8.

As in the August 31, 2018 letter, the September 13, 2018 fax stated
Disability Rights Florida was "not authorized" to come onto the facility's
premises "for any purpose," that the Advocate-Investigator's letter of
August 20, 2018 had "not cited any legal authority or basis entitling [her] to
such access," and the letter concluded by stating "[y]ou will not be allowed
on any unit or anywhere on the premises...based upon the information and
purpose set forth in your letter." *Id.* The Aspire Health Partners fax included
no additional information or legal basis for the denial of access to conduct
the monitoring.  No correspondence was sent from Aspire Health Partner's
attorney to the DRF Managing Attorney regarding the matter, nor was the
DRF Managing Attorney copied on the correspondence from Aspire Health
Partner's attorney to the Advocate-Investigator, even though the DRF
Managing attorney and Aspire Health Partner's attorney had been in contact
regarding this matter.

Based on the correspondence from Aspire Health Partners dated
August 31, September 7, and September 13, 2018, denying Advocate-
Investigator access to the facility to conduct her monitoring, Disability

8

Rights Florida was unable to conduct either of the scheduled monitoring activities at Lakeside Behavioral Healthcare. Moreover, pursuant to the correspondence, which stated that Disability Rights Florida was "not authorized" to come onto the facility's premises "for any purpose," Defendant has effectively denied Plaintiff the ability to access the facility at any time in the future as well.

## LEGAL ARGUMENT

### *Standard for Granting Preliminary Injunction*

This Court has the authority to grant the injunctive relief that the Plaintiffs request. FED. R. CIV. P. 65(a). A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009). The Court evaluates four factors when determining whether to grant a motion for preliminary injunction: (1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would

9

disserve the public interest. *See Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

### *Plaintiff Is Likely to Succeed on the Merits*

Plaintiff is the state of Florida's P&A. Ex. 1, at 2. This case is governed by the PAIMI Act. 42 U.S.C. § 10801, *et seq.* Defendant's facility serves and treats individuals with mental illness, individuals who are clients and constituents of Plaintiff and whom Plaintiff is authorized by law to protect and advocate for. *See* 42 U.S.C. § 10803(2)(A); 42 C.F.R. § 57.1(a).

Under the PAIMI Act, Plaintiff is authorized by federal law "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of individuals with mental illness." 42 U.S.C. § 10805(a)(1)(B). One of the tools utilized by Plaintiff, as authorized by the federal government, to protect and advocate for individuals with mental illness, *see* 42 U.S.C. § 10803(2)(A), is its "monitoring authority," the ability to access facilities in the state providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3). Federal regulation further elaborates that "[a] P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and

to all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R. § 51.42(b); *see also* 42 C.F.R. § 51.42(c) (access shall extend also to "programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours."). This "[a]ccess to facilities and residents ... extended[s] to all authorized agents of a P&A system." 42 C.F.R. § 51.42(a).

The purpose of the authority allowing access to facilities is to monitor compliance with respect to rights and safety of residents and to inspect, view and photograph all areas of the facility used by residents or accessible to residents. 42 CFR 51.42(c)(2)–(3). A P&A's monitoring authority is a crucial part of its purpose and activities as an organization. *See Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, No. 15-12470, 2015 WL 7423591, at *4 (E.D. Mich. Nov. 23, 2015) (the "purpose [of a P&A] thoroughly [is] frustrated when the[ir] efforts [...] are stymied for months on end"). In fact, when adopting the PAIMI regulations, the Department of Health and Human Services explained that "monitoring compliance with patient rights is an opportunity to prevent incidents from occurring and to ensure that facility staff, as well as residents, understand what their rights are." 62 Fed. Reg. at 53,561 (Oct. 15, 1997).

Defendant's facility Lakeside Behavioral Healthcare is undoubtedly a "facility" for the purposes of the PAIMI access statutes and regulations. *See* 42 C.F.R. § 51.2 ("Facility includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and *psychiatric hospitals*, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units.") (emphasis added). The residents receiving care and treatment at this facility are individuals with mental illness. *See Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 314 (D.Conn. 2003) ("[E]vidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill[,] is sufficient under [PAIMI] to merit access by [the P&A]."). The patients at Lakeside Behavioral Healthcare thus are covered by the PAIMI Act and thus are Plaintiff's clients and constituents. *See* 42 C.F.R. § 57.1(a) (protection and advocacy services are to be provided to all individuals with mental illness).

Accordingly, Plaintiff and its agents, including staff of Disability Rights Florida that were prepared to visit Defendant's facility the week of September 4, 2018, plainly have the authority to have reasonable unaccompanied access Lakeside Behavioral Healthcare, its programs, and its residents at reasonable times. Courts throughout the country have unilaterally held the same, following the plain language of the statutes and regulations, when faced with access disputes among similarly situated parties. *See Equip for Equality, Inc. v. Ingalls Memorial Hospital*, 329 F.Supp.2d 982, 990–991 (N.D. Ill. 2004) (holding that Illinois P&A had the authority under the PAIMI Act to access an inpatient psychiatric unit and its residents, unannounced and unaccompanied, and in accordance with statute and regulation); *Robbins v. Budke*, 739 F.Supp. 1479, 1485 (D.N.M. 1990) (policies and practices of medical center limiting the New Mexico P&A's access to psychiatric unit and psychiatric patients "that affect the ability of [the] P&A to communicate with the patients at [the psychiatric unit] on a day-in and day-out basis … violate the [P&A's] constitutional and statutory right of access."); *see also Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F.Supp. 1202, 1207 (W.D. Mich. 1994) (facilities that "house mentally ill individuals" are subject to the P&As PAIMI access authority).

13

The only remaining question when evaluating the merits of this case would be whether Plaintiff's request to access Defendant's facility was "reasonable." It was – Plaintiff's original notice of monitoring letter was sent two weeks in advance of the proposed week of monitoring, included in specific detail the types of activities that would be conducted during the monitoring visit, and even gave Defendant notice that Plaintiff's agents would be conducting a one-day monitoring during a specified week. Ex. 3. This is well beyond what is considered "reasonable" by the PAIMI Act. *See Ingalls Memorial*, 329 F.Supp.2d at 990 (permitting the P&A unannounced access at times well outside of visiting hours). However, even this analysis probably goes beyond what the Court would consider on the merits at trial, as Defendant stated Disability Rights Florida was "not authorized" to come onto the facility's premises "for any purpose," Exs. 4 & 8, whether reasonable or not, and Plaintiff in its complaint seeks declaratory and injunctive relief to be able to access Defendant's facility in the future in accordance with the PAIMI Act, not damages based on Defendant's past failure to allow that access. Doc. 1, at 13–14.

Courts have recognized that P & A access is fundamental, and P & A agencies have almost universally prevailed in litigation based on access.

14

*Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*, 65 F.Supp.3d 1312, 1324 (N.D. Ala. 2014). Accordingly, because there are no disputed facts and this case presents a purely legal question, Plaintiff is likely to succeed on the merits. The statutes and regulations governing Plaintiff's access under the PAIMI Act clearly allow for reasonable unaccompanied access by Disability Rights Florida of Defendant's facility Lakeside Behavioral Healthcare. Defendant's refusal to allow such access is thus clearly in violation of the PAIMI Act.

## *Plaintiff Will Suffer Irreparable Harm If Denied Preliminary Injunctive Relief*

An injury is irreparable "if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir.1987). Even when a later money judgment might undo an alleged injury, the alleged injury is irreparable if damages would be "difficult or impossible to calculate." *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 n. 2 (5th Cir. Unit B June 1981). As noted above, the purpose of monitoring the Defendant's facility is to ensure the facility's compliance with the rights and safety of patients. Delaying this crucial mission is irreparable harm.

15

Denying a P&A the ability to exercise its access authority constitutes a *per se* irreparable harm. *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005) ("A protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm."). Many cases analyzing motions for preliminary injunctions filed by P&As have found the same – for example, one court found a threat of irreparable harm when a P&A was unable to investigate a reported incident of abuse or neglect, even though that incident has reportedly been investigated by other agencies. *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1051 (E.D.Wisc. 2001). A "defendant's refusal to [allow a P&A to exercise a statutorily-granted duty under PAIMI] does, in a very real and readily identifiable way, pose a threat to the [P&A's] being able to discharge its obligations [a]nd no amount of damages will remedy that sustained harm." *Id.*; *see also Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1173 (N.D. Iowa 2001) (a P&A is "irreparably harmed by being prevented from pursuing fully its right to access records and patients [and] [t]hat harm cannot be fully remedied by damages").

16

As in similar cases where P&As were denied the ability to exercise their federally-granted authority, Plaintiff is irreparably harmed by Defendant's denial of its PAIMI Act access authority. Such harm cannot be remedied by damages, nor does Plaintiff seek damages in this case. Plaintiff merely wishes to be able to exercise its authority, part of its federally-granted authority that is crucial to its functioning as an organization. *See Cotton*, 1989 WL 224953, at *9.

Any further delay in being able to exercise its authority would only cause further irreparable harm. This is especially true considering this case is likely to be assigned as a Track Two case, meaning the Court's final ruling on this issue may not occur for another two years. Middle District of Florida Local Rule 3.05(b)(2) & (c)(2)(E). Moreover, this is especially true considering Plaintiff wished to expeditiously exercise its monitoring authority, and additional delay frustrates Plaintiff's federally-granted ability to access Defendant's facility at reasonable times, which it sought to do in an expeditious manner and which Plaintiff now seeks to do as expeditiously as possible.

### *The Harm Plaintiff Would Suffer if a Preliminary Injunction Were Denied Outweighs the Harm Defendant Would Suffer if it Were Granted*

Plaintiff would suffer irreparable harm if the preliminary injunction were not granted. Denial of a P&A's access authority is a *per se* irreparable harm. Accordingly, the harm faced by Plaintiff is inherent in the denial, irreparable, and continues to be irreparable so long as Defendant continues to deny Plaintiff access to its facility.

On the contrary, Defendants would not suffer any harm in merely having to comply with federal law. *See Advocacy Center v. Stalder*, 128 F.Supp.2d 358, 368 (M.D. La. 1999) (the issuance of an injunction does not constitute a harm if it "requires them to do exactly what the act requires, i.e., to comply with the law"). The only cognizable harm that Defendants can allege is minor inconveniences for staff or disruption in daily routine, a "harm" that does not outweigh the potential irreparable harm to Plaintiff. *See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 499 (11th Cir. 1996); *see also Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F.Supp. 1202, 1208–09 (W.D.Mich.1994) (defendants' objections that the P & A access to facility for children will interfere with programming have no merit); *Gerard Treatment Programs*, 152 F.Supp.2d at 1175 (the interest of a defendant in preventing a P&A from exercising its federal authority "border on the

nonexistent"). Moreover, any potential harm that Defendant may raise from a perceived failure to maintain patient confidentiality is unfounded, as a P&A is required to maintain confidentiality "to the same extent as is required" by Defendant under state and federal law. 42 U.S.C. § 10806(a) (regarding access to records); *see also Pennsylvania Protection & Advocacy Inc. v. Houstoun*, 228 F.3d 423, 428–29 (3rd Cir. 2000) (holding that a P&A's access to confidential information did not intrude upon the privacy of residents such that it counsels against the issuance of a preliminary injunction because "federal law required that [the P&A] keep such records confidential"). Accordingly, Plaintiff's potential harm outweighs Defendants' potential harm.

### *A Preliminary Injunction Would Serve the Public Interest*

The public interest is served by having a functioning protection and advocacy organization that can effectively serve individuals with mental illness. This is especially true of members of the public who are individuals with mental illness, individuals that are vulnerable to abuse, neglect, and serious injury, and are traditionally underserved by State systems. 42 U.S.C. § 10801(a). As mentioned *supra*, "monitoring compliance with patient rights is an opportunity to prevent incidents from occurring and to ensure that

facility staff, as well as residents, understand what their rights are." 62 Fed.

Reg. at 53,561. By granting preliminary relief, Plaintiff, the state's P&A, can

exercise a crucial part of its authority, *see Cotton,* 1989 WL 224953, at *9,

and function in service of the public interest.

### *No Bond Should Be Required*

Finally, Plaintiff requests exemption from the requirement of bond in

Fed. R. Civ. P. 65(c). The Eleventh Circuit has held that "the amount of

security required by [Rule 65(c)] is a matter within the discretion of the trial

court [and] the court may elect to require no security at all." *BellSouth*

*Telecomms., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d

964, 971 (11th Cir. 2005); *see also Baldree v. Cargill*, 758 F.Supp 704, 707

(M.D. Fla. 1990). As noted above, enjoining Defendants from deny Plaintiff

access to its facility in accordance with federal law will not cause

Defendants serious harm. No bond should be required of the Plaintiffs as

Defendants are unlikely to suffer any injury, outside of possibly minor

inconvenience, as the result of the granting of the motion for preliminary

injunction. *See Howard v. City of Jacksonville*, 109 F.Supp.2d 1360, 1365

(M.D. Fla. 2000). The strong public interest coupled with the inequality of

hardships argues against the necessity of posting bond in this case. *See also*

*Gerard Treatment Programs*, 152 F.Supp.2d at 1176 (bond requirement waived in a case where the P&A was successfully granted a preliminary injunction where they sought access to a facility).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to enter a preliminary injunction enjoining Defendant's from denying Plaintiff Disability Rights Florida and its agents from accessing its Lakeside Behavioral Healthcare facility and its residents, access that is required by the PAIMI Act and its implementing regulations. Pursuant to Local Rules 4.06(b)(1) & 4.05(b)(3)(iii), Plaintiff's Proposed Order for Preliminary Injunction is attached as Exhibit 9.

Respectfully submitted this 1st day of November, 2018,

By:

**Curtis Filaroski**
Florida Bar No. 111972
**Peter Sleasman**
Florida Bar No. 367931
**Attorneys for Plaintiff**
Disability Rights Florida
2473 Care Drive, Suite #200
Tallahassee, Florida 32308
Phone: (850) 488-8640

Fax: (850) 488-8640
curtisf@disabilityrightsflorida.org
peters@disabilityrightsflorida.org