## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DISABILITY RIGHTS FLORIDA, INC.,**

       Plaintiff,

v.                                              CASE NO.: 6:18-cv-1863-Orl-41DCI

**RICHARD JACOBS**, Administrator
for Lakeside Behavioral Healthcare,
 and **ASPIRE HEALTH
PARTNERS, INC.**, a Florida
not-for-profit corporation,

       Defendants.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action by Plaintiff for declaratory and injunctive relief against

Defendants for violations of the Protection and Advocacy for Individuals with

Mental Illness (PAIMI) Act, 42 U.S.C. §§ 10801 – 10807, specifically the access

provision of the PAIMI Act, 42 U.S.C. § 10805(a)(3). Pursuant to Fed. R. Civ. P.

56 and Local Rule 3.01, Plaintiff, by and through their undersigned counsel, moves

this Court to enter summary judgment in favor of Plaintiff.

1.     Plaintiff, as the State of Florida's designated protection and advocacy

organization (P&A), is authorized by 42 U.S.C. § 10805(a)(1)(B) to bring a cause

of action to enforce the provisions of the PAIMI Act.

2.     The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331.

3.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202.

4.     Plaintiff Disability Rights Florida is the State of Florida's P&A, which means it is authorized by the PAIMI Act to access facilities in the State providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3).

5.     Defendants Aspire Health Partners, Inc., are owners of the facility located at 434 West Kennedy Blvd., Orlando, FL 32810. There is no genuine dispute between the parties as to the material fact that this facility provides care and treatment to individuals with mental illness.

6.     There is no genuine dispute between the parties as to the material fact that Plaintiff was designated the State of Florida's P&A in 1987 via Executive Order 87-151.

7.     There is no genuine dispute between the parties as to the material fact that there has been no redesignation of a P&A in the State of Florida pursuant to 42 U.S.C. § 15043(a)(4).

8.      There is no genuine dispute between the parties as to the material fact that Plaintiff requested access to Defendant's facility located at 434 West Kennedy Blvd., Orlando, FL 32810 pursuant to the authority outlined in the PAIMI Act.

9. There is no genuine dispute between the parties as to the material fact that Defendant denied, and continues to deny, Plaintiff's request to access Defendants' facility.

10. Defendants have violated and continue to violate the PAIMI Act by refusing to allow Plaintiff, the State's designated P&A, access to Defendant's facility located at 434 West Kennedy Blvd., Orlando, FL 32810.

11. Defendants cause Plaintiff irreparable harm by denying its ability to exercise its federally-granted authority under the PAIMI Act.

12. There is no adequate remedy at law; thus, Plaintiff seeks declaratory and permanent injunctive relief.

**WHEREFORE**, as there is no genuine dispute as to the material facts in this case, Plaintiff respectfully requests that this Court:

A. Pursuant to Federal Rule of Civil Procedure 56, grant Plaintiff summary judgment, as Plaintiff is entitled to judgment as a matter of law;

B. Enter declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that the Defendants' actions and failures to act violate the PAIMI Act by:

    i. Denying the Plaintiff, the State of Florida's designated P&A, reasonable access to Defendant's facility located at 434 West Kennedy Blvd., Orlando, FL 32810 to conduct monitoring; and

     ii. Preventing the Plaintiff from monitoring compliance with respect to

     the rights, safety, health, and welfare of individuals with mental

     illness residing at Defendant's facility located at 434 West Kennedy

     Blvd., Orlando, FL 32810;

C. Enter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring

     Defendants to allow Plaintiff to have access to its facility located at 434

     West Kennedy Blvd., Orlando, FL 32810 and its residents in order to

     conduct its monitoring under the PAIMI Act;

D. Retain jurisdiction over this action to ensure Defendants' compliance with

     the mandates of the PAIMI Act; and

E. Order such other, further, or different relief as the Court deems equitable.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     In 1987, the Florida legislature transferred the authority of the Governor's

Commission on Advocacy for Persons with Disabilities, which had been an entity

within the office of the Governor that served as the State's P&A, to a private

nonprofit corporation. *See* Chapter 87–130, Laws of Florida, *available at*

http://edocs.dlis.state.fl.us/fldocs/leg/actsflorida/1987/1987V1Pt1.pdf, p. 1013.

This act authorized the Governor to designate, by Executive Order, a private,

nonprofit corporation to receive federal funds for the implementation of the Florida

Protection and Advocacy system to protect the rights of persons with

4

developmental disabilities and the mentally ill in accordance with federal law. *Id.*
All powers, responsibilities, and property of the Governor's commission were
transferred to the nonprofit corporation. *Id.* The nonprofit organization was
required to meet the federal requirements for the Protection and Advocacy System
and have access to client records and facilities as specified in federal law. *Id.*

2.    In accordance with the legislative requirement, the Governor issued an
Executive Order designating the Advocacy Center for Persons with Disabilities,
Inc. (Advocacy Center) as the nonprofit corporation. (Ex. 1), Declaration of Cherie
Hall, Att. 2, Executive Order 87-151.

3.    Since that time, Plaintiff, then the Advocacy Center, has carried out its
duties as the designated P&A for the State of Florida. *See Advocacy Center for
Persons with Disabilities, Inc. v. Woodlands Estates Association, Inc.*, 192
F.Supp.2d 1344, 1345–1346 (M.D. Fla. 2002); *Doe v. Stincer*, 175 F.3d 879 (11th
Cir. 1999).

4.    From 1987 until 2008, approximately every two years, the Office of the
Governor issued Executive Orders designating Plaintiff, then the Advocacy Center,
as the P&A for the State of Florida. *See* Executive Order 08-240, *available at*
http://edocs.dlis.state.fl.us/fldocs/governor/orders/2008/08-240-extension.pdf.

5.    After November 21, 2008, there were no further Executive Orders issued
regarding designation of a P&A in the State of Florida. The 2008 Executive Order

was in effect until December 31, 2010. Plaintiff received no information from the Office of the Governor regarding a new executive order.  Based on the 1999 letter to the Advocacy Center from the Department of Health and Human Services' Administration on Developmental Disabilities indicating that renewal of the Executive order was not necessary to the continuing designation and the fact that no attempt had been made to redesignate the Florida P&A, Plaintiff did not seek renewal of Executive Order 87-15. (Ex. 1), at 4, ¶ 11.

6.      Disability Rights Florida has continued to operate as the State of Florida's designated P&A from November 21, 2008 to the present day. (Ex. 1), at 5, ¶ 13.

7.      Since Plaintiff was initially designated as the P&A for the State of Florida in 1987, there has been no redesignation of the state's P&A status to a different entity pursuant to 42 U.S.C. § 15043(a)(4). There has been no good cause for redesignation declared, Plaintiff has never received a notice from the State of an intention of the State to make a redesignation, the State has never given timely notice and an opportunity for public regarding any redesignation, and Plaintiff has never had the opportunity to appeal a redesignation to another entity. (Ex. 1), at 4–5, ¶ 12; *see also id.*, Att. 4 (letter to Plaintiff affirming that the original designation of the P&A is controlling unless a redesignation for good cause occurs).

8.      In 2010, the Advocacy Center changed its name to Disability Rights Florida. (Ex. 1), Att. 1, Articles of Amendment to the Articles of Incorporation. Plaintiff,

under its new moniker, continued to operate in the same fashion as the State of Florida's P&A. (Ex. 1), at 2, ¶ 5.

9.     As has always been required as a function of operating as the designated P&A, *see* Executive Order 87-151, § 4, Plaintiff has continued to provide the office of the Governor with quarterly and annual financial and program reporting, all of which explicitly refer to Plaintiff as the designated P&A. Most recently, a copy of Plaintiff's 2018 Annual Report was provided to the Office of the Governor. (Ex. 1), Att. 5, 2018 Annual Report.

10.     The federal government has continued to provide funding to Disability Rights Florida to carry out its duties as the State's Protection and Advocacy system. (Ex. 1), Att. 4, Notice of Award dated December 12, 2018 to Disability Rights Florida from the Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Mental Health Services.

11.     Defendants operate a facility at 434 West Kennedy Blvd., Orlando, FL 32810 (hereinafter "Defendants' facility"). Defendants' facility is a "designated receiving facility" that provides crisis stabilization services, and is licensed as a Crisis Stabilization Unit and a Short-Term Residential Treatment Facility. (Ex. 2), Defendant's, Aspire Health Partners, Inc., Answers to Plaintiff's First Set of Requests for Admissions, at ¶¶ 6, 8, 9.

12.     A "designated receiving facility" is a facility "which provides, at a minimum, emergency screening, evaluation, and short-term stabilization for *mental health or substance abuse disorders*." § 394.455(12), Fla. Stat. (emphasis added).

13.     A "short-term residential treatment program" (or "SRT") is "a state-supported acute care residential alternative service that operates 24 hours per day, 7 days per week and is typically of 90 days or less in duration, *and which is an integrated part of a designated public receiving facility and receiving state mental health funds under the authority of Chapter 394, F.S.* The purpose of an SRT is to provide intensive short-term treatment to individuals who are temporarily in need of a 24-hour-a-day structured therapeutic setting in a less restrictive, but longer-stay alternative to hospitalization." 65E-12.103(27), Fla. Admin. Code (emphasis added).

14.     The patients receiving care and treatment at Defendants' facility are individuals with mental illness.

15.     On August 20, 2018, an Advocate-Investigator with Disability Rights Florida sent a notice of facility monitoring to Defendant Richard Jacobs, informing him of Plaintiff's intent to monitor the facility located at 434 West Kennedy Blvd., Orlando, FL 32810. *See* (Ex. 3), 8/20/18 Letter to Defendants' Facility.

16.   Defendant Jacobs was the President and Chief Executive Officer of Aspire Health Partners, Inc., at that time.[1]

17.   The August 20, 2018 letter notified the facility of Plaintiff's intent to monitor the facility, and provided PAIMI Act authority explaining Plaintiff's ability to do so as the State of Florida's P&A.

18.   On August 31, 2018, the Advocate-Investigator received a letter via fax from Barbara Flanagan, an attorney representing Aspire Health Partners ("Aspire Health Partner's attorney"). *See* (Ex. 5), 8/31/18 Letter from Barbara Flanagan.  In response to Plaintiff's notice of facility monitoring, she stated Disability Rights Florida was "not authorized" to come onto the facility's premises "for any purpose." *Id.* at 2.

19.   This exchange was the first in a series of correspondence between attorneys for Plaintiff and Defendants, where Plaintiff asserted its desire and authority to monitor Defendants' facility located at 434 West Kennedy Blvd., Orlando, FL 32810, while Defendants denied Plaintiff's ability to do so.  *See* (Ex. 6), 9/7/18 Letter from Kristen Lentz; (Ex. 7), 9/7/18 Email Chain Between Barbara Flanagan and Kristen Lentz; (Ex. 8), 9/13/18 Letter from Barbara Flanagan to Melissa Cyril.

---

[1] Defendant Jacobs is no longer the President and Chief Executive Officer of Aspire Health Partners, Inc. *See* (Ex. 4), Defendant's, Aspire Health Partners, Inc., Notice of Serving Answers to Plaintiff's First Set of Interrogatories & Defendant's, Aspire Health Partners, Inc., Answers to Plaintiff's First Set of Interrogatories, at ¶¶ 3 & 4.

20.     Defendant Aspire has denied Plaintiff access to their facility to conduct

monitoring.  This denial of access to monitor the facility is current and ongoing.[2]

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.     Governing Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify

which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). An issue of fact is material if it satisfies a legal element

of the claim under the applicable substantive law that might affect the outcome of

the case. *See id.*

At the summary judgment stage, a court's "function is not to weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue [of fact] for trial." *Id.* at 249. A genuine issue exists only if sufficient

evidence exists favoring the nonmoving party, such that a jury could return a

---

[2] The material facts of this case are undisputed. In Defendant's, Aspire Health Partners, Inc.,
Answers to Plaintiff's First Set of Requests for Admissions, Defendant admits to the authenticity
of the documents presented as exhibits in this Motion for Summary Judgment, and to the
contents of those exhibits. (Ex. 2), at ¶¶ 13 – 22.

verdict in favor of that party. *See id.*; *Witter v. Delta Air Lines, Inc.*, 138 F. 3d 1366, 1369 (11th Cir. 1998) (citations omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F. 2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F. 2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F. 3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the … [nonmoving] party's position will not suffice to demonstrate a material issue of genuine fact that precludes summary judgment." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 252).

Plaintiff brings this Motion for Summary Judgment because there is no genuine issue or dispute as to any material fact in this case and Plaintiff is entitled to judgment as a matter of law.

## II.    Plaintiff Has Federal Authority to Access Defendants' Facility as the State of Florida's P&A

Plaintiff Disability Rights Florida seeks to monitor Defendants' facility

pursuant to the access authority granted to Protection and Advocacy Systems under

the PAIMI Act. *See* 42 U.S.C. § 10805(a)(3). The undisputed facts demonstrate

that there has been no redesignation of Plaintiff as the Florida P&A. Moreover,

federal law is clear that a P&A receiving PAIMI Act funds has the authority to

access facilities pursuant to the dictates of the PAIMI Act. *See* 42 U.S.C. §

10805(a). The primary dispute in this case is Defendants' contention that Plaintiff

is not the State of Florida's P&A. *See generally* (ECF Doc. 12). For the following

reasons, Plaintiff is the State of Florida's P&A and has the authority to access

Defendants' facility as a matter of law. The undisputed facts demonstrate

Defendant denied Plaintiff its federally-granted legal right and, accordingly, this

Court should grant Plaintiff's requested relief as a matter of law.

### A. *Plaintiff has Been and Continues to be the Designated Protection and Advocacy Organization for the State of Florida*

The Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD

Act), 42 U.S.C. § 15001 *et seq.*, offers States federal money to improve community

services, such as medical care and job training, for individuals with developmental

disabilities. *See* 42 U.S.C. §§ 15023(a), 15024. As a condition of that funding, a

State must establish a P&A system "to protect and advocate the rights of

12

individuals with developmental disabilities." [3] 42 U.S.C. § 15043(a)(1).  The P&A

system receives separate federal funds, paid to it directly. 42 U.S.C § 15042(a) &

(b). A second federal law, the PAIMI Act, 42 U.S.C. § 10801 *et seq.,* increases that

separate funding and extends the mission of P&A systems to include individuals

with mental illness. 42 U.S.C. §§ 10802(2), 10803, & 10827; *see also Virginia*

*Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 250 (2011) (stating the

same). At present, every State accepts funds under these statutes. [4] *Stewart,* 563

U.S. at 250.

In addition, a participating State is free to appoint either a state agency or a

private nonprofit entity as its P&A system. 42 U.S.C. § 15044(a); 42 U.S.C. §

---

[3] The body of federal law governing the designation of a State's P&A is contained in subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD Act), 42 U.S.C. § 15041, *et seq.,* and its implementing regulations, 45 C.F.R. § 1326.19, *et seq. See* 42 U.S.C. § 10802(2) ("The term 'eligible system' [as it is used in the PAIMI Act] means the system established in a State to protect and advocate the rights of persons with developmental disabilities under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000."); 42 C.F.R. § 51.5(a) ("Federal financial assistance for protection and advocacy activities for individuals with mental illness will be given only to a System that has been established under … the Developmental Disabilities Assistance and Bill of Rights Act … and designated in accordance with 45 CFR part [1326], subpart B.").

[4] This includes the State of Florida. The federal government allocated $3,787,345 to the Florida Developmental Disabilities Council, which "implement[s] funds received from DD Act allocations] on behalf of the State of Florida," § 393.002(1), Fla. Stat., in fiscal year 2018. AIDD Developmental Disabilities Councils (DDC) Awards for the States/Territories, *available at* https://acl.gov/sites/default/files/about-acl/2018-06/DDC-2019-Estimates.pdf; *see also* Funding Allocations to States, *available at* https://acl.gov/about-acl/developmental-disabilities-assistance-and-bill-rights-act-2000-dd-act-funding-allocations ("The following tables show the amount of Federal grant funds, provided to each state, under The Developmental Disabilities Assistance and Bill of Rights Act of 2000, Subtitle B—Federal Assistance to State Councils on Developmental Disabilities.").

10805(c)(1)(B). In either case, the designated entity must have certain structural features that ensure its independence from the State's government. For example, once a State designates an entity as its P&A system, it may not change its selection without "good cause." 42 U.S.C. § 15043(a)(4)(A); *Stewart*, 563 U.S. at 251.

As stated above, Plaintiff is and continues to act as the State of Florida's P&A. *See supra* pp. 4–7. However, despite the undisputed facts that Plaintiff was designated as the State's P&A in 1987 and that it continues to act as the State's P&A, Defendants nonetheless argue that Plaintiff is not *actually* the State of Florida's P&A. As stated in more detail below, the Defendants' argument is incorrect because 1) it erroneously asserts and/or assumes that state law and/or a Governor of Florida's executive order controls all aspects of the designation process, and does not take into account the fact that federal law controls any change to a designation once it has been made; 2) the State continues to recognize Disability Rights Florida as the designated P&A organization in Florida; and 3) the federal government continues to recognize Disability Rights Florida as the designated P&A organization in Florida.

1. There Has Been No Termination or Amendment of Plaintiff's Designation as the Florida P&A as Required by Federal Law

As noted above, the State is free to appoint either a state agency or a private nonprofit entity as its P&A system. *Stewart*, 563 U.S. at 251. However, once a state designates an entity as its P&A system, federal law constrains the ability of

14

the state to change the designation. *See id* ("Once a State designates an entity as its P&A system, it may not change its selection without 'good cause.'").

Designation of a State's P&A must be done by a "designating official," which is "the Governor or other State official, who is empowered by the State legislature or Governor to designate the State official or public or private agency to be accountable for the proper use of funds by and conduct of the agency designated to administer the P&A system." 45 C.F.R. § 1326.19. In Florida, the designating official is the Governor. *See* Chapter 87–130, Laws of Florida. However, while the Governor has the authority to designate a P&A in the State of Florida, the laws and regulations governing the designation of a State's P&A is in all other respects governed by federal law. *See* 42 U.S.C. § 15043(a)(4) (governing re-designation of a P&A); 45 C.F.R. § 1326.20 (outlining what organizations may or may not be designated as the P&A and further outlining actions that must be taken to re-designate a P&A); *Stewart*, 563 U.S. at 251 (explaining that "[a] participating State is free to appoint ... its P&A system," but "the designated entity must have certain structural features [outlined in the DD Act and implementing regulations] that ensure its independence from the State's government"). In other words, designation and re-designation of a P&A is almost completely governed by federal law.

Defendants claim that the language of Executive Order 08-240, which "provide[s] for an extension of [Plaintiff's] designation ... until December 31,

2010," has terminated the Plaintiff's designation. (Doc. 12), at 3. However, this is an erroneous understanding of how re-designation or termination of the designation of the designated P&A occurs pursuant to federal law. A P&A system,

> shall not be redesignated unless (A) there is good cause for the redesignation; (B) the State has given the agency notice of the intention to make such redesignation, including notice regarding the good cause for such redesignation, and given the agency an opportunity to respond to the assertion that good cause has been shown; (C) the State has given timely notice and an opportunity for public comment in an accessible format to individuals with developmental disabilities or their representatives; and (D) the system has an opportunity to appeal the redesignation to the Secretary, on the basis that the redesignation was not for good cause.

42 U.S.C. § 15043(a)(4); *see also* 45 C.F.R. § 1326.20(d)–(f) (further outlining the re-designation process); *Stewart*, 563 U.S. at 251. None of this has occurred in the State of Florida since Plaintiff was initially designated in 1987 by Executive Order 87-151. It follows that Plaintiff remains the State's P&A.

Although Plaintiff continued for nearly 20 years to engage in the formality of seeking and obtaining a renewal of the Executive Order 87-151 approximately every 2 years, the renewal of the Executive Order was not necessary for the continuation of the designation.[5] There has been no termination or redesignation of the P&A in the State of Florida.

---

[5] This was confirmed in a response to an inquiry in 1999 from the Advocacy Center to the Department of Health and Human Services' Administration on Developmental Disabilities

16

2.  The State of Florida Recognizes Plaintiff as the State's P&A

Defendant's chief argument as to why Plaintiff is not the State of Florida's

P&A hinges on the fact that a supposed designating Executive Order has not been

issued since 2008. Even considering that the formality of re-designating an *already*

*designated P&A* need not occur every few years in perpetuity, as discussed *supra*,

Defendants' assertion also ignores the fact that the State of Florida has continued

to explicitly recognize Plaintiff as the P&A up to the present day. Considering that

designation is not *required* to be done through Executive Order pursuant to federal

law, *see* 42 U.S.C. § 15043, 45 C.F.R. § 1326.20 (both failing to outline a

prescribed method of designation), it is significant that the Office of the Governor

continues to recognize Plaintiff as the State's P&A.

Pursuant to Executive Order 87-151, over the last eight years – during the time

Defendants' claim Plaintiff has not been the State's P&A – Plaintiff has routinely

provided quarterly and annual financial and program reporting to the Governor's

office. Each quarter and year, Plaintiff has provided these reports, and the

Governor's office has accepted them as the reports of the State of Florida's P&A.

*See, e.g.*, (Doc. 16), Ex. 4 (letter transmitting the 2014 fiscal year annual report to

---

(ADD), the entity responsible for administering the federal grants provided to the Protection and
Advocacy system. They stated that "[t]he Governor does not need a new Executive Order every
two years after designating its [P&A] program. [ADD] keeps the original Executive Order in a
permanent file. An amendment or redesignation is the only exception to this requirement." (Ex.
1), Att. 3, Letter from ADD to Gary Blumenthal, Executive Director.

the Governor's office). The annual reports, and the transmittal letters delivering those reports, explicitly refer to Plaintiff as the P&A and the Governor has never objected to this characterization. *See id.*; *see also, e.g.*, (Ex. 1), Att. 5, 2018 Annual Report (provided to the Office of the Governor).

At no time has the Governor's office questioned the transmittal of these reports or the content contained in these reports. Aside from the Governor's original explicit designation of Plaintiff as the P&A via Executive Order, the Governor's office continues to recognize Plaintiff as the State of Florida's P&A by accepting reports received pursuant to this Executive Order. The Governor, the designating official, and his offices consider Plaintiff the State's P&A.

### 3. The Federal Government Recognizes Plaintiff as the State of Florida's P&A

The federal government may only make payments under the PAIMI Act to "eligible system," i.e. the designated P&A. 42 U.S.C. § 10803.[6] Since the time (December 31, 2010) Defendants claim Plaintiff has no longer been the State's P&A, Plaintiff has continued to receive funding under PAIMI to protect and

---

[6] The federal government may only make payments under the PAIMI Act if the system it is to make payments to "meet[s] the requirements of Section 10805 of this title." 42 U.S.C. § 10803(1). One of the "requirements" of that section is that such system shall have the authority to "have access to facilities in the State providing care or treatment," i.e. the monitoring authority Plaintiff seeks to exercise by bringing this suit. 42 U.S.C. § 10805(a)(3). Accordingly, regardless of Defendants' argument challenging the legitimacy of Plaintiff's designated P&A status, Plaintiff's receipt of funding itself legitimizes Plaintiff's claim that it has the authority to monitor Defendants' facility.

advocate for individuals with mental illness. *See* (Ex. 1), Att. 4; *see also* State Protection & Advocacy Systems, Administration for Community Living (ACL), *available at* https://acl.gov/programs/aging-and-disability-networks/state-protection-advocacy-systems (ACL, which administers four P&A programs including Protection and Advocacy for Individuals with Developmental Disabilities pursuant to the DD Act, listing all of the P&As throughout the United States, including Disability Rights Florida for the State of Florida). So too has the State of Florida received funding under the DD Act; as discussed *supra*, the State is required to have a designated P&A in order to continue to receive funding. *See* 42 U.S.C. § 15043(a)(1). Under these payment schemes, the authorities tied to the Acts – including the monitoring authority Plaintiff wishes to exercise in this case – are granted as a condition of payment. *See* 42 U.S.C. § 10803(1); 42 U.S.C. § 15043(a)(2) (States are unable to receive funding under the DD Act unless they have a P&A that is granted all of the authorities outlined in the section, including access authority). Accordingly, not only does the federal government recognize Plaintiff as the State of Florida's P&A by providing Plaintiff its funding, its dissemination of funding to Plaintiff confirms that Plaintiff has the authority as the P&A to conduct all activities authorized under federal law, including monitoring.

## B. *Plaintiff has the Authority to Access Defendants' Facility*

Defendant does not dispute that the State of Florida's P&A would have access to monitor Defendants' facility. *See* (Ex. 2), at ¶ 24. However, regardless of whether Defendant stipulates to this fact or not, as the State of Florida's P&A, Plaintiff has the federal authority to access Defendants' facility. Under the PAIMI Act, any P&A receiving PAIMI Act funding shall have access facilities in the state providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3); *see also Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1324 (S.D.Ala. 2014) (noting that Courts have recognized that P&A access is fundamental, and P&A agencies have almost universally prevailed in litigation based on access). Federal regulation further elaborates that "[a] P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R. § 51.42(b); *see also* 42 C.F.R. § 51.42(c) (access shall extend also to "programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours."). This "[a]ccess to facilities and residents ... extended[s] to all authorized agents of a P&A system." 42 C.F.R. § 51.42(a). Access to facilities under this authority is done for the purpose of:

> (1) Providing information and training on, and referral to programs addressing the needs of individuals with

> mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.
>
> (2) Monitoring compliance with respect to the rights and safety of residents; and
>
> (3) Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

42 C.F.R. § 51.42(c).

Defendants' facility is undoubtedly a "facility" for the purposes of the PAIMI access statutes and regulations. *See* 42 C.F.R. § 51.2 ("Facility includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units."). The residents receiving care and treatment at this facility are individuals with mental illness. The patients at Defendants' facility thus are covered by the PAIMI Act and thus are Plaintiff's clients and constituents. *See* 42 C.F.R. § 57.1(a) (protection and advocacy services are to be provided to all individuals with mental illness).

Finally, the fact that Defendants' facility is a private-owned facility does not shield it from PAIMI Act access authority. *See* 42 C.F.R. § 51.42(b) ("A P&A

system shall have reasonable unaccompanied access to public and *private* facilities and programs in the State which render care or treatment for individuals with mental illness.") (emphasis added); *Equip for Equality, Inc. v. Ingalls Memorial Hosp.*, 292 F.Supp.2d 1086 (N.D. Ill. 2003) (Illinois P&A is entitled to access a private hospital). Plaintiff, as the State's P&A, shall have access to Defendants' facility pursuant to the PAIMI Act.

### III.   Plaintiff Has Standing to Bring This Case

The Defendants have argued in prior motions that Plaintiff does not have standing. In order to have standing to bring suit under Article III of the Constitution, a plaintiff must have an injury in fact, causation between the injury and the defendant's actions, and there must be a likelihood that the requested relief will redress the alleged injury. *See Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). There has been no attempt to redesignate the State of Florida's P&A. Moreover, the state and federal government recognize Plaintiff as the State's P&A. Accordingly, as monitoring is one of the authorities granted to a state P&A under PAIMI, *see* 42 U.S.C. § 10805(a)(3), Plaintiff suffers an injury in fact caused by Defendants' refusal to allow Plaintiff to exercise its authority. *See Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005) ("A protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes

irreparable harm."). The Court may redress this injury by ordering Defendants to allow Plaintiff to exercise this authority. Accordingly, the undisputed facts demonstrate that Plaintiff has standing to bring this case because of its status as the State's P&A as a matter of law.

## IV.     Plaintiff Is Entitled to Permanent Injunctive Relief

Plaintiff seeks permanent injunctive relief as a part of its remedy. To show entitlement to permanent injunctive relief, a plaintiff must demonstrate: (1) success on the merits of its claims; (2) that it has suffered an irreparable injury for which remedies available at law are inadequate compensation; (3) that a remedy in equity is warranted considering the balance of hardship between the plaintiff and defendant; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 392–93 (2006).

For the reasons stated above, *supra* pp. 12–23, i.e., because Plaintiff is the P&A, is entitled to access Defendants' facility, and has standing to bring this case, Plaintiff can demonstrate success on the merits of the claim. Moreover, because Defendants have denied and continue to deny Plaintiff access to its facility, as it is required to do under the PAIMI Act, Plaintiff has suffered and continues to suffer irreparable harm. *See Ohio Legal Rights Serv.*, 365 F. Supp. 2d at 883; *see also Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*,152 F.Supp.2d 1150, 1173 (N.D Iowa 2001) (a P&A is "irreparably harmed

by being prevented from pursuing fully its right to access records and patients [and] that harm cannot be fully remedied by damages").

Plaintiff would suffer irreparable harm without the issuance of a permanent injunction. On the contrary, Defendant would suffer no harm in merely having to comply with federal law. *See Advocacy Center v. Stalder*, 128 F.Supp.2d 358, 368 (M.D.La. 1999) (the issuance of an injunction does not constitute a harm if it "requires them to do exactly what the act requires, i.e., to comply with the law"). Finally, the public interest is in favor of having a fully functioning P&A to serve individuals with mental illness, and it would not be disserved by the issuance of a permanent injunction. *See* 42 U.S.C § 10801(a). Accordingly, Plaintiff is entitled to its requested relief of a permanent injunction to access Defendant's facility.

## CONCLUSION

Plaintiff is the State of Florida's P&A and receives funding under the PAIMI Act. Accordingly, the undisputed facts of the case reveal that Defendants are unlawfully denying Plaintiff and its agents to its facility and violating the PAIMI Act as a matter of law, a harm that Plaintiff seeks to redress through this Court. This Court should **grant** Plaintiff's Motion for Summary Judgment and order Plaintiff its requested remedies.


Respectfully Submitted,

Curtis C. Filaroski, Esquire
Florida Bar No. 111972
curtisf@disabilityrightsflorida.org

Peter Sleasman, Esquire
Florida Bar No. 367931
peters@disabilityrightsflorida.org

DISABILITY RIGHTS FLORIDA
2473 Care Drive, Suite 200
Tallahassee, FL 32308
Telephone: (850) 488-8640
Facsimile: (850) 488-8640

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

filed with the Clerk of Court using the CM/ECF system on August 2, 2019.

Curtis C. Filaroski, Esquire
Florida Bar No. 111972

25