UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DISABILITY RIGHTS FLORIDA, INC.,**

      **Plaintiff,**

v.                                               Case No: 6:18-cv-1863-Orl-78DCI

**RICHARD JACOBS and ASPIRE
HEALTH PARTNERS, INC.,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on the Motion to Dismiss Complaint for Declaratory and Injunctive Relief ("Motion to Dismiss," Doc. 12) filed by Defendants, Richard Jacobs ("Jacobs") and Aspire Health Partners, Inc. ("Aspire"). Defendants argue that Plaintiff, Disability Rights Florida, Inc. ("DRF"), is not the current protection and advocacy ("P & A") system for Florida and thus, lacks standing to bring the current action. Finding no merit in Defendants' argument, the motion is denied.

**BACKGROUND**

In 1986, Congress enacted the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII Act" or "Act"),[1] 42 U.S.C. § 10801, *et seq.*, "in response to horrific reports of abuse and neglect in state psychiatric hospitals." *Ala. Disabilities Advocacy*

---

[1] Some courts abbreviate the Protection of Mentally Ill Individuals Act of 1986 to "PAIMI." This is because in 1988, Congress amended the statute to remove all references to the phrase "mentally ill individuals" and replaced those references with "individuals with mental illness." *See* Requirements Applicable to Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53548–01 (Dep't of Health & Human Servs. Oct. 15, 1997) (final rule). However, the name of the Act remained the same. So, the Court adopts the abbreviation "PAMII."

1

*Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1319–20 (S.D. Ala. 2014) (citations omitted). Modeled after the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15001 *et seq.*,[2] the PAMII Act is meant "to ensure that the rights of individuals with mental illness are protected" and "to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will . . . protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § 10801(a)(1), (b)(1), (2)(A).

Like the DD Act, the PAMII Act requires each state, as a condition of receiving certain federal funding, to designate a P & A system (either an independent governmental agency or private entity) to protect and advocate the rights of individuals with mental illness. *See* 42 U.S.C. §§ 10803 (PAMII Act), 15043 (DD Act).

Each P & A system is vested with the authority to investigate incidents of abuse and neglect of individuals with mental illness and to pursue administrative, legal, and other remedies on behalf of those individuals. 42 U.S.C. § 10805(a)(1)(A)–(C). To ensure the investigatory role of the system, the PAMII Act grants P & A systems broad access to records of individuals with mental illness and to facilities providing care or treatment in the state. 42 U.S.C. § 10805(a) (3), (4); *Ala. Disabilities Advocacy Program v. J.S.*

---

[2] The DD Act, which Congress enacted in 1975, was the first statute to establish a federally directed P&A system. It, like the later-enacted PAIMI and PAIR Acts, requires that states establish P&A agencies such as DRF, and authorizes those agencies to "pursue legal, administrative, and other appropriate remedies or approaches to ensure" that individuals with disabilities are protected. 42 U.S.C. § 15043(a)(2)(A)(i). The DD Act, however, limits the scope of the P&A agencies' authority to individuals with developmental disabilities. § 15043(a)(1).

2

*Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (describing the scope of access granted to a P & A system as broad).

DRF is a private, not-for-profit organization that describes itself as the P & A system authorized by Florida to carry out mandates under PAMII. (Doc. 1, ¶¶ 3–5, 7, 12).

In July and August of 2018, DFR received calls "from patients expressing concerns about their experiences at Lakeside Behavioral Healthcare" ("Lakeside")—an inpatient psychiatric and crisis intervention facility owned and operated by Aspire. (*Id.* ¶¶ 9, 11; Doc. 2-2, ¶ 4). Concerned about "the treatment and discharging of patients at" Lakeside, DRF "decided to monitor the facility." (Doc. 2-2, ¶ 5). On August 20, 2018, DRF sent a notice of "facility monitoring" to Jacobs, the Administrator of Lakeside, notifying him that DRF would be conducting a "one-day monitoring visit during the week September 3 through September 7, 2018," pursuant to its authority under the PAMII Act. (*Id.* ¶¶ 10, 20–21; Doc. 2-3 at 2–4, ("Notice of Facility Monitoring")).

On August 31, 2018, Aspire's attorney, Barbara Flanagan ("Flanagan"), responded that DRF was "not authorized to come onto [Lakeside] . . . to conduct any investigation or for any purpose" because DRF's letter did not (1) cite any legal authority entitling it to access Lakeside; or (2) identify any DRF-client that was residing, or expected to reside, at Lakeside. (Doc. 1, ¶¶ 21; Doc. 2-4 at 2–3). A week later, DRF's managing attorney, Kristen Lentz ("Lentz") sent Flanagan an email explaining that the Notice of Facility Monitoring cited authority entitling DRF to access Lakeside and requested that Aspire either grant DRF access on September 18, 2018, or provide a legal basis for its denial. (Doc. 1, ¶¶ 23–25; Doc. 2-6 at 2–3; Doc. 2-5 at 2–4).

3

That same day, Flanagan replied to Lentz's email stating, "[DRF] will not be permitted. I sent a letter on this already that was faxed. Please read my letter." (Doc. 1, ¶¶ 26; Doc. 2-7 at 2–3). When Lentz requested clarification as to which letter Flanagan was referring, Flanagan did not respond. (Doc. 1, ¶ 27; Doc. 2-7 at 2). Instead, on September 13, 2018, Flanagan faxed DRF the same letter she previously sent on August 31, 2018, denying DRF access to Lakeside. (Doc. 1, ¶¶ 28–30; Doc. 2-8 at 2–3). As such, DRF was unable to investigate and monitor the facility. (Doc. 1, ¶ 31; Doc. 2-2, ¶ 11).

As a result, DRF filed suit against Defendants, seeking injunctive and declaratory relief. Specifically, DRF alleges that Defendants violated the PAMII Act by denying it access to Lakeside. (Doc. 1). Defendants now move to dismiss the complaint.

## ANALYSIS

Defendants bring their motion under Federal Rule of Civil Procedure 12(b)(6). However, because Defendants' motion essentially challenges DRF's standing to bring the instant suit, (*see* Doc. 12), the Court will construe the Motion as a factual attack on the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Attacks under rule 12(b)(1) can be either "facial" or "factual." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A facial attack challenges subject-matter jurisdiction based on the allegations in the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir.1990). A factual attack, on the other hand, challenges subject-matter jurisdiction in fact. *Makro Capital*, 543 F.3d at 1258. In resolving a factual attack, a district court may consider extrinsic evidence, such as affidavits and testimony. *Id*. "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the

4

case' without presuming the truthfulness of the plaintiff's allegations." *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir.2003)).

Here, Defendants challenge the factual existence of subject matter jurisdiction and rely on evidence extrinsic to the Complaint to support their arguments. Thus, the Court construes Defendants' challenge as a factual attack on the Court's subject matter jurisdiction and considers matters outside the pleadings.

Article III, Section 2 of the United States Constitution limits federal courts' jurisdiction to actual cases and controversies. "A plaintiff's standing to bring and maintain [its] lawsuit is a fundamental component of a federal court's subject matter jurisdiction." *Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016), as revised (May 24, 2016). To establish standing, a plaintiff must allege: (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

In their motion, Defendants contend that DRF is not the P & A system for Florida and, therefore, lacks standing to bring the instant action under the PAMII Act. (*See* Doc. 12). In 1987, Florida Governor Robert Martinez issued an executive order designating the Advocacy Center for Persons with Disabilities, Inc. ("Advocacy Center"), now DRF[3], to

---

[3] In 2010, the Advocacy Center changed its name to DRF with the Florida Department of State. (*See* Doc. 16-2).

5

serve as Florida's P & A system for purposes of the PAMII Act. (*See* "Executive Order 87-151," Doc. 16-1). Defendants acknowledge as much. (*See* Doc. 12 at 2). Still, they posit that DRF is not the current P & A system for Florida.

Defendants note that, for several years, Governor Martinez's successors issued executive orders "extending" Executive Order 87-151. (*See id.* at 2 (citing the successive executive orders)). The last executive order to "extend" Executive Order 87-151 was executed by Governor Charlie Crist in 2008. (*Id.*). It stated, in relevant part:

> Executive Order 87-151, as extended by Executive Orders 94-333, 98-310, 00-149, 00-376, 01- 364, 02-312, 03-236, 04-281, 05-272, 07-37, and 08-34, designating the Advocacy Center for Persons with Disabilities, Inc. (the "Advocacy Center") as the Protection and Advocacy System for the State of Florida, as provided for in 45 C.F.R. § 1386.20, is hereby amended to provide for an extension of the designation of said body until December 31, 2010, or until such earlier time as this Executive Order is amended or rescinded by further executive order of the Governor.

("Executive Order 08-240," Doc. 12-1). According to Defendants, because Executive Order 08-240 was the last order to "extend" Executive Order 87-151, DRF is not the P & A system for Florida and lacks standing to bring the instant suit. (*See* Doc. 12 at 2–4). Defendants are mistaken.

The purported extensions of Executive Order 87-151 were superfluous and had no effect on DRF's status as the P & A system for Florida. This is because once a state designates an entity as its P & A system, it cannot redesignate said system unless:

(A) there is good cause for the redesignation;

(B) the State has given the agency notice of the intention to make such redesignation, including notice regarding the good cause for such redesignation, and given the agency an opportunity to respond to the assertion that good cause has been shown;

6

>   (C) the State has given timely notice and an opportunity for public comment in an accessible format to individuals with developmental disabilities or their representatives; and
>
>   (D) the system has an opportunity to appeal the redesignation to the Secretary, on the basis that the redesignation was not for good cause.

42 U.S.C. § 15043(a)(4); *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 251 (2011) ("Once a State designates an entity as its P & A system, it may not change its selection without 'good cause.'" (citing 42 U.S.C. § 15043(a)(4)(A))).

To be sure, in a letter dated August 27, 1999, the Department of Health and Human Services' Administration on Developmental Disabilities ("ADD"), which administers the federal grants provided to the P & A system, explained that "[Florida's] Governor [did] not need a new [e]xecutive [o]rder every two years after designating its [P&A] program. [ADD] keeps the original [e]xecutive [o]rder in a permanent file. An amendment or redesignation is the only exception to this requirement." (*See* Doc. 16-3).

Defendants' point to no evidence or legal authority demonstrating that Florida engaged in the redesignation process. And the federal government continues to recognize DRF as the P & A system in Florida by delivering funds under the PAMII Act.[4] (*See, e.g.*, Doc. 16-5). Thus, the Court concludes that DRF is the P & A system for Florida.

As facility monitoring is one of the powers granted to a P & A system under the PAMII Act, *see* 42 U.S.C. § 10805(a)(3), Plaintiff sufficiently alleges an injury in fact

---

[4] The Court notes that Florida also continues to receive federal funding under the DD Act, which like the PAMII Act, requires it to have an established P & A system as a condition of funding. *See* 42 U.S.C. §, 15043; *see also AIDD Developmental Disabilities Councils (DDC) Awards for the States/Territories FY 2018 Annual Allocation*, https://acl.gov/sites/default/files/about-acl/2018-05/DDC-2018.pdf (last visited July 24, 2019).

7

springing from Defendants' refusal to allow DRF on to Lakeside for monitoring. Moreover, DRF's injury could be redressed by the Court entering an order requiring Defendants to give DRF access to Lakeside for monitoring. Accordingly, DRF satisfies Article III's standing requirements and dismissal is unwarranted. *See Doe v. Stincer*, 175 F.3d 879, 883–86 (11th Cir. 1999) (holding that the Advocacy Center—now DRF—had standing to bring suit under the PAMII Act).

It is therefore **ORDERED** and **ADJUDGED** that Defendants', Richard Jacobs and Aspire Health Partners, Inc., Motion to Dismiss Complaint for Declaratory and Injunctive Relief (Doc. 12) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on August 27, 2019.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record