UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DISABILITY RIGHTS FLORIDA, INC.,**

    **Plaintiff,**

v.                                                             Case No: 6:18-cv-1863-Orl-41DCI

**RICHARD JACOBS and ASPIRE
HEALTH PARTNERS, INC.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff, Disability Rights Florida, Inc.'s ("DRF"), Motion for Preliminary Injunction, (Doc. 2), which seeks to enjoin Defendants, Richard Jacobs ("Jacobs") and Aspire Health Partners, Inc.'s ("Aspire") from denying DRF and its agents access to Lakeside Behavioral Healthcare ("Lakeside"). For the following reasons, the motion is granted.

### BACKGROUND

DRF is a private, not-for-profit organization that describes itself as the protection and advocacy ("P&A") system authorized by Florida to carry out mandates under the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII Act" or "Act"),[1] 42 U.S.C. § 10801, *et seq.* (Doc. 1, ¶¶ 3–5, 7, 12).

---

[1] Some courts abbreviate the Protection of Mentally Ill Individuals Act of 1986 to "PAIMI." This is because in 1988, Congress amended the statute to remove all references to the phrase "mentally ill individuals" and replaced those references with "individuals with mental illness." *See* Requirements Applicable to Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53548–01 (Dep't of Health & Human Servs. Oct. 15, 1997) (final rule). However, the name of the Act remained the same. So, the Court adopts the abbreviation "PAMII."

1

In July and August of 2018, DFR received calls "from patients expressing concerns about their experiences at Lakeside Behavioral Healthcare" ("Lakeside")—an inpatient psychiatric and crisis intervention facility owned and operated by Aspire. (*Id.* ¶¶ 9, 11; Doc. 2-2, ¶ 4). Concerned about "the treatment and discharging of patients at" Lakeside, DRF "decided to monitor the facility." (Doc. 2-2, ¶ 5). On August 20, 2018, DRF sent a notice of "facility monitoring" to Jacobs, the Administrator of Lakeside, notifying him that DRF would be conducting a "one-day monitoring visit during the week September 3 through September 7, 2018," pursuant to its authority under the PAMII Act. (*Id.* ¶¶ 10, 20–21; Doc. 2-3 at 2–4, ("Notice of Facility Monitoring")).

On August 31, 2018, Aspire's attorney, Barbara Flanagan ("Flanagan"), responded that DRF was "not authorized to come onto [Lakeside] . . . to conduct any investigation or for any purpose" because DRF's letter did not (1) cite any legal authority entitling it to access Lakeside; or (2) identify any DRF-client that was residing, or expected to reside, at Lakeside. (Doc. 1, ¶¶ 21; Doc. 2-4 at 2–3). A week later, DRF's managing attorney, Kristen Lentz ("Lentz") sent Flanagan an email explaining that the Notice of Facility Monitoring cited authority entitling DRF to access Lakeside and requested that Aspire either grant DRF access on September 18, 2018, or provide a legal basis for its denial. (Doc. 1, ¶¶ 23–25; Doc. 2-6 at 2–3; Doc. 2-5 at 2–4).

That same day, Flanagan replied to Lentz's email stating, "[DRF] will not be permitted. I sent a letter on this already that was faxed. Please read my letter." (Doc. 1, ¶¶ 26; Doc. 2-7 at 2–3). When Lentz requested clarification as to which letter Flanagan was referring, Flanagan did not respond. (Doc. 1, ¶ 27; Doc. 2-7 at 2). Instead, on September 13, 2018, Flanagan faxed DRF the same letter she previously sent on August

2

31, 2018, denying DRF access to Lakeside. (Doc. 1, ¶¶ 28–30; Doc. 2-8 at 2–3). As a result, DRF was unable to investigate and monitor the facility. (Doc. 1, ¶ 31; Doc. 2-2, ¶ 11).

Seeking injunctive and declaratory relief, DRF filed suit against Defendants on November 11, 2018, alleging that they violated the PAMII Act by denying DRF access to Lakeside. (Doc. 1). That same month, DRF filed its Motion for Preliminary Injunction seeking to enjoin Defendants from preventing DRF and its agents from accessing Lakeside pursuant to the PAMII Act. (Doc. 2).

## ANALYSIS

To obtain a preliminary injunction, the movant must sufficiently "establish that '(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) . . . the injunction would not be adverse to the public interest.'" *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). "A preliminary injunction . . . 'is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.'" *Llovera v. Florida*, 576 F. App'x 894, 896 (11th Cir. 2014) (per curiam) (quoting *Forsyth Cty.*, 633 F.3d at 1039). Accordingly, each factor will be addressed in turn.

   *1. Likelihood of success on the merits*

DRF has established that it will likely succeed on the merits of its sole claim under the PAMII Act.[2] This Act grants P&A systems, like DRF, the authority to investigate incidents of abuse and neglect of individuals with mental illness and to pursue administrative, legal, and other remedies on behalf of those individuals. 42 U.S.C. § 10805(a)(1)(A)–(C). To achieve those objectives, the PAMII Act grants P & A systems broad access to, *inter alia*, facilities providing care or treatment in the state. 42 U.S.C. § 10805(a)(3).

The authority of all P&A systems is also governed by the PAMII Act's implementing regulations. *See* 42 C.F.R. § 51.1, *et seq.* Those regulations provide that "[a]ccess to facilities and residents shall be extended to all authorized agents of a P&A system." 42 C.F.R. § 51.42(a). Where, as here, a complaint is made to the P&A system, the system shall have: (1) "reasonable unaccompanied access to public and private facilities and programs in the [s]tate which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents," *id.* § 51.42(b); and (2) "reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their

---

[2] Defendants contend that DRF will not succeed on its claim because it is not Florida's current P & A system and it identifies "no client for whom protective services are required." (Doc. 12 at 3–4). Not true. The Court has already concluded that DRF is the P & A system for Florida. (*See* Order on Mot. To Dismiss). Moreover, the PAMII Act does not require a P & A system to identify a "client" in Lakeside to access it. The Act broadly authorizes a P & A system "access to facilities in the [s]tate providing care or treatment" to individuals with mental illnesses. *See* 42 U.S.C. 10805(a)(3); *see also* 42 C.F.R. § 51.42(b)(1)–(3) ("[A]ccess shall be afforded, upon request, by the P & A system when: (1) [a]n incident is reported or a complaint is made to the P&A system; (2) [t]he P&A system determines there is probable cause to believe that an incident has or may have occurred; or (3) [t]he P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness."). Therefore, Defendants' arguments lack merit.

residents at reasonable times, which at a minimum shall include normal working hours and visiting hours," *id.* § 51.42(c). Access is for the purpose of "[m]onitoring compliance with respect to the rights and safety of residents," and "[i]nspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents." *Id.* § 51.42(c)(2)–(3).

Here, DRF gave Lakeside—a "facility" for purposes of the PAMII Act[3]— two-weeks' notice that it intended to come to the "facility to complete a one-day monitoring visit for the week of September 3 to September 7, 2018." (Doc. 2-2, ¶¶ 4–6; Doc. 2-3 at 2). Despite receiving notice of DRF's anticipated visit, Defendants refused to allow DRF to access Lakeside "for any purpose." (*See* Docs. 2-4; 2-8). As a result, DRF could not carry out its monitoring functions as authorized by the PAMII Act. (Doc. 2-2, ¶ 11). On these facts, the Court finds that DRF establishes a likelihood of success on the merits of its PAMII claim.[4]

*2. Irreparable injury*

---

[3] *See* 42 C.F.R. § 51.2 (defining a facility as "any public or private residential setting that provides overnight care accompanied by treatment services); (*see also* Doc. 12 at 3 (conceding that "Lakeside . . . is a facility as . . . defined under the Act")).

[4] *See Ala. Disabilities Advocacy Program*, 65 F. Supp. 3d at 1325 (finding "at least 24–hours['] notice before accessing facilities and exercising this function is reasonable" and that the defendant facility thwarted the purpose of the PAMII Act by refusing to grant a P & A system access to its program); *Equip for Equality, Inc. v. Ingalls Mem'l Hosp.*, 329 F. Supp. 2d 982, 990–991 (N.D. Ill. 2004) (holding that Illinois's P&A system had the authority under the PAIMI Act to access an inpatient psychiatric unit and its residents, unannounced and unaccompanied, and in accordance with statute and regulation); *Penn. Protection & Advocacy, Inc. v. Royer–Greaves Sch. for the Blind*, No. 98–3995, 1999 WL 179797, at *6 (E.D. Pa. Mar. 25, 1999) (finding that "reasonable access includes general facility access without notice"); *Robbins v. Budke*, 739 F. Supp. 1479, 1485 (D.N.M. 1990) (finding that policies and practices of medical center limiting the New Mexico P&A system's access to psychiatric unit and psychiatric patients "affect[ed] the ability of [the] P&A to communicate with the patients at [the psychiatric unit] on a day-in and day-out basis" and "violate[d] the [P & A's] constitutional and statutory right of access").

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)). DRF asserts that Defendants' denial of access to Lakeside will cause it to suffer irreparable harm because it cannot exercise its federally granted authority under the PAMII Act. The Court agrees.

Defendants' refusal to provide DRF with access to Lakeside—a facility that it is entitled to access, and indeed, charged to access as a part of its responsibilities—"does, in a very real and readily identifiable way, pose a threat to [DRF's] being able to discharge its obligations. And no amount of damages will remedy that sustained harm." *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1051 (E.D. Wis. 2001). As such, Plaintiff has satisfied its burden of establishing irreparable harm. *See Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150, 1173 (N.D. Iowa 2001) (finding that a P&A was "irreparably harmed by being prevented from pursuing fully its right to access records and patients, . . . [and] [t]hat harm [could not] be fully remedied by damages") (citations omitted).

3. *Damage to Defendants*

Defendants claim that they will suffer harm because DRF seeks injunctive relief "requiring [Defendants] to allow DRF unfettered access to its facility *ad initium*." (Doc. 12 at 4). However, DRF plainly and simply requests that the Court enjoin Defendants' from denying DRF and its agents access to Lakeside and its residents so it can discharge its duties under the PAMII Act. (Doc. 2 at 21). Therefore, the Court rejects Defendants' argument. Any potential harm to Defendants' would be slight and would not outweigh the harm to DRF if it is denied access to Lakeside.

*4. Public Interest*

Furthermore, no disservice is done to the public if DRF is granted access to Lakeside. PAMII sets forth a clear federal legislative mandate for P&A systems to investigate potential instances of abuse or neglect of individuals with mental illness. 42 U.S.C. § 10801(b). Therefore, it would undermine federal law and disserve the public if DRF could not access Lakeside and exercise its statutorily-granted duties under the PAMII Act.

## CONCLUSION

Based on the foregoing, the Court grants DRF's Motion for Preliminary Injunction. For the injunction, DRF requests exemption from the bond requirement provided in Federal Rule of Civil Procedure 65(c). (Doc. 2 at 20). That rule provides, in pertinent part:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Although DRF is not a "an officer or agency" of the United States, and thus appears to be subject to the bond requirement, in the absence of a dictate from the Eleventh Circuit that a bond is mandatory, the Court exercises its discretion to waive the bond requirement in this case since Plaintiff is a non-profit advocacy organization created by the state under federal law. Moreover, Defendants have not raised the issue of bond and it is unclear what "security" Defendants would require against improvident issuance of the preliminary injunction. *See Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707–08 (M.D. Fla.1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991) (a district court has discretion to waive bond requirement imposed by Rule 65(c)). Thus, no bond will be required.

7

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's, Disability Rights Florida, Inc., Motion for Preliminary Injunction (Doc. 2) is **GRANTED**.

2. Richard Jacobs, Aspire Health Partners, Inc., and their agents are preliminary enjoined from denying Disability Rights Florida, Inc. and its agents access to Lakeside Behavioral Healthcare and its residents, as set forth under the Protection and Advocacy for Mentally Ill Individuals Act of 1986 and its implementing regulations.

3. This preliminary injunction is not conditioned on the posting of any bond or security by Disability Rights Florida, Inc.

**DONE** and **ORDERED** in Orlando, Florida on August 27, 2019.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record